

**IT IS ORDERED as set forth below:**


**Date: September 29, 2025**

_____
**James R. Sacca**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | CASE NO. 21-11548 |
| THE ALIERA COMPANIES, INC., d/b/a Aliera | ) | Currently pending in the U.S. |
| Healthcare, Inc., et al.,[1] | ) | Bankruptcy Court for the |
| | ) | District of Delaware |
| Debtors. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| ALIERA LT, LLC, AS LIQUIDATING | ) | |
| TRUSTEE FOR THE ALIERA COMPANIES, | ) | ADVERSARY |
| INC. d/b/a ALIERA HEALTHCARE INC., et | ) | PROCEEDING NO. 24-05035 |
| al., | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ZOE CAPITAL FINANCIAL AND | ) | |
| INSURANCE SERVICES, INC., | ) | |
| Defendant. | ) | |
| _____ | ) | |

_____

[1] The jointly administered Debtors in these Chapter 11 cases along with the last four digits of their
federal tax identification number include: The Aliera Companies Inc. (9555) (Case No. 21-11548),
Advevo LLC (6736) (Case No. 22-10124), Ensurian Agency LLC (3244) (Case No. 22-10123), Tactic
Edge Solutions LLC (2923) (Case No. 22-10122) and USA Benefits & Administrators LLC (5803) (Case
No. 22-10121).

## ORDER ON MOTION TO SET ASIDE DEFAULT JUDGMENT

This matter is before the Court on the Motion to Set Aside Default Judgment (the "Motion") (ECF No. 15) filed by the Defendant, Zoe Capital Financial and Insurance Services, Inc. (the "Zoe Capital").  As the Court will explain below, the facts of this case do not support Defendant's arguments, and the Court will not set aside its Default Judgment against Defendant.

## BACKGROUND

The Plaintiffs, Aliera LT, LLC, as Liquidating Trustee for The Aliera Companies, Inc. D/B/A Aliera Healthcare Inc. and Neil F. Luria, in his capacity as the Trustee of the Sharity Ministries, Inc. Liquidating Trust, filed their Complaint against Zoe Capital on February 15, 2024, seeking, among other things, the return of $376,000.00 of commissions paid to Defendant by Aliera on the grounds they were fraudulent transfers, but also damages for conspiracy, aiding and abetting breach of fiduciary duty and violation of Georgia RICO, in which treble damages were sought.

The Summons was issued on February 21, 2024, and provided notice that an answer or other response to the Complaint must be filed within 30 days of its issuance. The following day, Plaintiffs' counsel caused the Summons and Complaint to be served by regular and certified mail on Zoe Capital c/o Registered Agent, Heather Retsky Tax Prep, Inc., 23300 Ventura Blvd., Ste. A, Woodland Hills, CA 91364. (ECF No. 3).  Attached as Exhibit C to Plaintiffs' Response to the Motion is a copy of the green certified mail, return receipt card showing that it was delivered to

2

Heather Retsky Tax Prep, Inc. ("Heather Retsky"), as registered agent, and signed by "Rindy Errico."[2]  (ECF No. 17).

The answer or other response to the Complaint was due on March 23, 2024. However, Zoe Capital did not file an answer.  Therefore, on May 20, 2024, Plaintiffs filed a Request for Entry of Default, which request was served on Heather Retsky, as registered agent by regular mail.  The Clerk entered the Default the next day because no answer or other response had been filed.

Then on May 24, 2024, the Court entered an Order and Notice of Status Conference in this and more than 30 other related cases for June 25, 2024, at 1:30 p.m.  The notice provided that the status conference would be conducted virtually and contained the link to the Court's Virtual Courtroom.  The Court served this Order and Notice by regular US mail on Heather Retsky, as registered agent for the Defendant.

On June 20, 2024, five days before the status conference, Plaintiffs filed a Motion for Entry of Default Judgment against Defendant, which was served by regular mail on Heather Retsky, as registered agent.

When the 30 or more status conferences in the related matters came on for hearing on June 25, 2024, at 1:30 p.m., the Courtroom Deputy called each case individually for appearances.  When this case was called at 1:48 p.m., Sean Wheelus announced that he was "representing Zoe Capital", so it was clear that he received

---

[2] According to Exhibits to Plaintiffs' Response to the Motion, "Laurindo Errico" signed the Defendant's January 6, 2025, filing with the California Secretary of State showing that Heather Retsky Tax Prep, Inc. was the registered agent for service for the Defendant and she also signed the subsequent February 12, 2025, filing that showed the registered agent was changed to Sean Wheelus.

the notice of the status conference from Heather Retsky, his company's registered agent for service.  June 25, 2024 Hearing at 1:48:39PM.

Although each case was called individually for purposes of having people record their appearances on the record, the Court did not discuss each case individually but rather handled the matters in categories, such as the approximately 7 objections that were filed to 15 of Plaintiffs' Motion for Mediation Procedures in cases in which answers were filed, the Motion for Mediation Procedures as a whole, and, at the end, a procedural comment the Court had about the multiple then-pending Motions for Default Judgment in cases, including the instant case.

When appearances were being made, the President of a defendant in a separate case that had not filed an answer made an oral appearance to let the Court know that his attorney was in a car accident and they would be filing an answer. The Court made it clear to him that an answer needed to be filed soon, or the Plaintiffs would be moving for a default judgment.  *See* June 25, 2024 Hearing at 1:59:30 ("You need to have an attorney make a prompt appearance in the case . . . . You need to have him or someone in his firm make a prompt appearance in the case and then start prosecuting the defense of the case, otherwise Plaintiff [sic] is going to continue to press forward with a Motion for Default Judgment.").  Again, Zoe Capital's principal was present at this same hearing just 11 minutes prior to that conversation.

Toward the end of the status conferences, the Court discussed the motions for default judgment that had or may be filed, specifically discussing with Plaintiff's counsel what counts he would be seeking default judgments on because some counts

involved core proceedings on which the Court could enter a final judgment and others involved non-core proceedings in which the Court could only enter proposed findings of fact and conclusions of law for the District Court's consideration. The Plaintiffs even mentioned the Defendant by name as a party against whom a Motion for Default Judgment was pending. *See* June 25, 2024 Hearing at 2:57:51 P.M. The status conferences were concluded after that discussion. Despite hearing all of what was said at the Status Conferences, no response to the Motion for Default Judgment was filed.

On September 5, 2024, Plaintiffs filed an Amended Motion for Default Judgment to limit the relief to certain counts involving avoiding and recovery of fraudulent transfers that were core proceedings on which this Court could enter a final judgment, while withdrawing the state law tort claims that are non-core proceedings on which the Court could not enter a final judgment. The Amended Motion for Default Judgment was served on Heather Retsky, as registered agent for Defendant. Despite being present during the Status Conference and having knowledge of the adversary proceeding against Zoe Capital, Mr. Wheelus did not take any other action in the instant case until October of 2024.

On September 13, 2024, the Court entered a Default Judgment against Defendant for $376,472.33, plus costs and post-judgment interest at the legal rate. The Default Judgment was also served on Heather Retsky, as registered agent for Defendant.

A little less than a month later, on October 10, 2024, Wheelus, pro se, sent a letter to the Court asking it to reconsider the Default Judgment. The Plaintiffs filed a response in opposition two weeks later, and on November 6, 2024, the Court entered an order denying the motion for reconsideration and advising Wheelus that the Court could not consider his request because Zoe Capital, a corporation, can only appear in Court through a lawyer. (ECF No. 13).

More than five months later, and about seven months after the entry of the Default judgment, Defendant finally filed a request to set aside the Default Judgment through a lawyer.

Defendant argues that the Default Judgment must be set aside because (a) under Fed. R. Civ. P. 60(b)(4) service was allegedly insufficient; (b) Rule 55(b)(2) required service on Wheelus after he entered his appearance as Defendant's representative; (c) Rules 60(b)(1) and (3); (d) Defendant's failure to respond was justified due to its lack of receiving service of the summons and complaint; (e) Wheelus's attendance at the Status Conference shows he did not fail to respond to the Complaint; and (f) under Rule 60(b)(6) exceptional circumstances exist to warrant setting aside the Default Judgment. For the reasons set forth below, none of these arguments are persuasive.

## LEGAL STANDARD

Trial courts have discretion in deciding whether to set aside a default judgment under Fed. R. Civ. P. 60(b), which is made applicable to this adversary proceeding

through Fed. R. Bankr. P. 9024. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).[3]

The defendant bears the burden of proof in the Motion. *Id*. at 1299. A decision under such motion is an equitable one, whereby the Court must "strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.'" *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981) (quoting *Bankers Mtg. Co. v. United States*, 423 F.2d 73, 77 (5th Cir.), *cert. denied*, 399 U.S. 927, (1970)).[4] Additionally, courts must consider the timeliness of the defendant's delay in moving to set aside a default judgment. *See, e.g.*, *In re Worldwide Web Sys., Inc.*, 328 F.3d at 1297 (discussing how the defendant's delay in moving to set aside the default judgment would be prejudicial to the plaintiff); *Friedman v. Schiano*, 777 F. App'x 324, 335 (11th Cir. 2019) (discussing how the defendant's "months-long delay in failing to appear" was prejudicial to the plaintiff in a case where a motion to set aside default judgment was denied).

Having established the standard for obtaining relief, the Court now turns to the arguments of the parties.

---

[3] The Court shall hereinafter refer to the Federal Rules of Civil Procedure as the "Civil Rules" and the Federal Rules of Bankruptcy Procedure as the "Bankruptcy Rules."

[4] All Fifth Circuit decisions rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

## DISCUSSION

### A. Civil Rule 60(b)(4)

Civil Rule 60(b)(4) provides that a party may be relieved of a judgment if such "judgment is void." Zoe Capital contends that the Default Judgment entered in this case is void because the Plaintiff failed to provide adequate proof of service on Zoe Capital, and therefore the Court lacked jurisdiction over this Defendant. The Court disagrees.

In the Motion, Zoe Capital's principal Sean Wheelus swore in an affidavit that "[n]either Zoe Capital nor [Wheelus] [were] personally served with process in this Adversary Proceeding and we were not aware that our certified professional accountant, Heather Retsky, was listed as registered agent in 2024 (if in fact she ever was so listed) nor did she ever tell me she was." (Motion, Ex. A ¶ 25, ECF No. 15-3). This statement does not move the needle for setting aside the Default Judgment.

For starters, Plaintiff never contended that it served Zoe Capital or Wheelus "personally." Rather, Plaintiff asserts that it served Zoe Capital's registered agent, Heather Retsky, which is a permissible method of service of process. Bankruptcy Rule 7004(b)(3)(A) (permitting that "a copy of a summons and complaint may be served by first-class mail, postage prepaid" upon a corporation "by mailing the copy to . . . an agent authorized by appointment . . . to receive service."). The main issues here are whether Plaintiff has provided sufficient proof of service and whether Heather Retsky was Zoe Capital's registered agent. As the Court will discuss below,

8

the record favors the Plaintiff such that the Motion must be denied under Civil Rule 60(b)(4).

### 1. *Proof of Service*

A plaintiff must serve a defendant in accordance with the provisions set forth in Bankruptcy Rule 7004.   Particular to this case, "a copy of a summons and complaint may be served by first-class mail, postage prepaid" upon a corporation "by mailing the copy to . . . an agent authorized by appointment . . . to receive service." Bankruptcy Rule 7004(b)(3)(A).   Proof of service must be demonstrated "by the server's affidavit."  Civil Rule 4(l); Bankruptcy Rule 7004(a) (incorporating Civil rule 4(l) into adversary proceedings).[5]

The Plaintiff filed a certificate of service on May 3, 2024, which stated that Plaintiff served a copy of the summons and complaint by "(i) United States First Class Mail, and (ii) Certified Mail, return receipt requested, each affixed with pre-paid postage sufficient to ensure delivery" on Zoe Capital's registered agent, Heather Retsky on February 22, 2024. (ECF No. 3).  In its subsequent Request for Entry of Default, Plaintiff attached an affidavit representing that "[o]n February 22, 2024, the Plaintiffs served the Complaint and Summons on [Zoe Capital]. On May 3, 2024, the Plaintiffs filed a Certificate of Service evidencing this service in this adversary

---

[5] Zoe Capital argues that Plaintiff failed to effectuate proper service under Civil Rule 4(e)(1), which provides that a defendant may be served in accordance with the state law for either "state where the district court is located or where service is made."  However, as the Court discusses below, the Plaintiff still effectuated proper service under Bankruptcy Rule 7004(b)(3)(A), thus rendering Zoe Capital's argument inapplicable here.

proceeding." (ECF No. 4).[6]  Finally, in its Response to the Motion, Plaintiff attached
the return receipt from its mailing of the Summons and Complaint on Zoe Capital,
which was signed by Rindy Errico at Heather Retsky's offices.  *See* (Response, Ex. C,
ECF No. 17).[7]

Zoe Capital, who holds the burden on its Motion, has not presented any
evidence pointing towards this signature to be a forgery besides an indefinite, self-
serving statement in Wheelus's Affidavit that Wheelus "d[id] not know who at Retsky
could have even signed for service in this Adversary Proceeding," because the
employees at Heather Retsky "both work from home, not at the location listed on the
mailings." (Motion, Ex. A ¶ 25, ECF No. 15-3).   However, that "self-serving
affidavit[] . . . lacks credibility in light of other, objective evidence in the record that
suggests" Heather Retsky still received mail at this address.  *See Friedman v.
Schiano*, 777 F. App'x at 328 (refusing to set aside a default judgment where the
defendant could not show that the address listed on the Certificate of Service was not
his usual place of abode); *see also* (Motion, Ex. A. ¶ 28, ECF No. 15-3) (wherein
Wheelus represented that his "accountant's employee told [him] that [the Order and

---

[6] Zoe Capital further argues that Plaintiff failed to "promptly" make proof of service "in accordance
with the Bankruptcy Rules." Bankr. N.D. Ga. Local Rule 7005-1.  As Plaintiff aptly points out, the
term "promptly" is not defined in the Local Rules, nor has Zoe Capital argued as to what constitutes
"prompt" proof of service or cited any cases to guide the Court in defining this term.  As such, the Court
finds Plaintiff's argument that its affidavit attached to the Request for Entry of Default was
sufficiently prompt because it was filed with the Court before the Order and Notice of the Status
Conference and the Motion for Default Judgment, or any additional action was taken in the case.  Also
of note is that the Summons and Complaint and the Order and Notice of Status Conference were both
mailed to Heather Retsky's address. *See* (ECF Nos. 3, 6).
[7] Rindy Errico appears to be the same individual that signed Zoe Capital's Statement of Information
on January 6, 2025.  *See* (Reply, Ex. A., ECF No. 18) (wherein the document was signed by "Laurinda
Errico").

Notice of Status Conference] addressed to Defendant was delivered to Retsky and [he] personally picked it up from Retsky."). *But see* (Response, Ex. C, ECF No. 17) (attaching the Plaintiff's return receipt of service, which was signed by "Rindy Errico" at Heather Retsky).[8]

Thus, the Court holds that Plaintiff sufficiently demonstrated proof of service.

### 2. The "True" Registered Agent

Next, Zoe Capital contends that Heather Retsky was not in fact Zoe Capital's registered agent, and service was improper for that reason. Despite this contention, the record shows otherwise.

Before the Court are three pertinent documents: the Affidavit of Service, Wheelus's Affidavit, and Exhibit A of the Reply. First, Plaintiff swore in an affidavit that it mailed the summons and complaint on Heather Retsky, who was Zoe Capital's registered agent at the time of service on February 22, 2024, the day after the Summons was issued. (Request for Entry of Default, Ex. A ¶ 6, ECF No. 7); (Certificate of Service, ECF No. 3). Thus, the Plaintiff established that Heather Retsky was the registered agent. Next, in Wheelus's Affidavit, he fails to state whether or not Heather Retsky was his registered agent at the time of service of the Summons and Complaint. *See* (Motion, Ex. A ¶ 25, ECF No. 15-3) (stating in

---

[8] Wheelus represented that he received the Order and Notice and Status Conference three weeks late from Heather Retsky's office. Still, it is clear that Heather Retsky did receive the mailings sent to it as registered agent for Zoe Capital. Had Wheelus provided an affidavit from an employee at Heather Retsky's office representing that they did not send him the Summons and Complaint, the outcome here may have been different. But his uncertain, self-serving statement that he does not know how Heather Retsky could have received the Summons and Complaint because they work from home was contradicted three paragraphs later in the same affidavit by Heather Retsky's purported receipt of the Order and Notice at the same address, and the certified mail, green card receipt showing the Summons and Complaint were received by it at that address.

indefinite terms that Zoe Capital was merely "not aware" that Heather Retsky was its registered agent).  Finally, Exhibit A of Zoe Capital's Reply brief, showed the California Secretary of State's corporation history page, which shows that Zoe Capital changed its registered agent *from* Heather Retsky *to* Sean Wheelus in February of 2025.  Clearly, Heather Retsky was listed as Zoe Capital's registered agent on the California Secretary of State's website before that point.[9]

Zoe Capital further argues that it has rebutted the so-called mailbox presumption, which provides that receipt of the summons and complaint is presumed where "the item was properly addressed, had sufficient postage, and was deposited

---

[9] The January 6, 2025, record on the California Secretary of State's website further reflects that Heather Retsky was Zoe Capital's registered agent for service of process.  While Zoe Capital contends that the webpage's failure to display Statements of Information prior to 2025 shows that Heather Retsky was not the registered agent, the Court disagrees.  Many records appear to be unavailable on the California Secretary of State's page that should be in Zoe Capital's possession.  California requires corporations to file an annual Statement of Information with the Secretary of State, which must include, *inter alia*, the corporation's agent for service of process.  *See* Cal. Corp. Code § 1502.  No records are on that webpage that contain links to identify any of Zoe Capital's Statement of Information filings, including its registered agent, prior to 2025, except for the initial filing in 2016.  But notably, the January 6, 2025, filing **does not** state that Zoe Capital *changed* its registered agent from the prior year.  Plaintiff's Affidavit is therefore uncontradicted in showing that Heather Retsky was Zoe Capital's registered agent in 2024.

As a reminder, the burden of proof for a Civil Rule 60(b)(4) is on the defaulting party.  *In re Worldwide Web Sys., Inc.*, 328 F.3d at 1298.  If the California Secretary of State's website may not online records of Zoe Capital's Statements of Information for prior years publicly available other than for this year, the current year, it is not the Plaintiff's burden to produce such records.  Zoe Capital is far more likely to have documents and records of prior Statements of Information in its possession, custody and control but has not produced these documents.  This Court does not see how it is possible for Plaintiff to otherwise have known about, identified and served Heather Retsky as Zoe Capital's registered agent.  Heather Retsky's office and practice appears to be a local accounting firm in Woodland Hills, California.  By contrast, Wheelus's address is in Calabasas, California—a different municipality.  Heather Retsky is not a massive, multi-national registered agent organization like CT Corporation System, where a plaintiff's lawyer may be able to mail the summons and complaint on a wing and a prayer and correctly guess the defendant's registered agent.  Of even greater coincidence would be that the local tax practice that Plaintiff happened to serve the Summons and Complaint also happened to be Zoe Capital and Wheelus's personal accountant.  This all makes Zoe Capital's argument that Heather Retsky was not Zoe Capital's registered agent in 2024 even more unbelievable.  Where else could Plaintiff have gotten Heather Retsky's information?  The Court is unmoved by Zoe Capital's argument and attached Exhibits, which fail to contradict Plaintiff's sworn statement that it served the Summons and Complaint on Zoe Capital through its registered agent, Heather Retsky.

in the mail." *In re Yoder Co.*, 758 F.2d 1114, 1118 (6th Cir. 1985) (cited by Zoe Capital). However, the presumption of receipt of service is not rebutted by merely denying receipt of service. *In re Farris*, 365 F. Appx. 198, 200 (11th Cir. 2010).

Zoe Capital asserts that it has done more than merely deny receipt of service because it has shown that (1) Heather Retsky was not its registered agent and (2) Zoe Capital typically does not receive mail through Heather Retsky. However, as the Court laid out above, Zoe Capital has not contradicted the Plaintiff's affidavit establishing that Heather Retsky was in fact Zoe Capital's registered agent. Whether Zoe Capital also received mail at another address does not change this outcome. It is not uncommon for corporations to enlist a registered agent to receive service of process at an address different from the corporation's principal place of business.

Having dispensed of those two arguments, Zoe Capital's only remaining ground to set aside the judgment under Civil Rule 60(b)(4) is that it simply did not receive a copy of the Summons and Complaint. However, as discussed above, that does not form a sufficient basis for setting aside a default judgment. *See, e.g.*, *In re Farris*, 365 F. Appx. at 200 (providing that "mere denial of receipt" is not sufficient to rebut the mailbox presumption). Moreover, Plaintiff attached a copy of the return receipt to its Response, which was signed by Rindy Errico, the same individual that signed Zoe Capital's Statement of Information on January 6, 2025.[10]

---

[10] Despite the more than five-month lapse between the entry of Court's Order Denying Defendant's Motion to Reconsider on the basis that a corporation cannot appear pro se and the filing of the Motion, Zoe Capital did not provide a sworn affidavit from any employee of Heather Retsky denying receipt of service in this case. The only matter of record related to this point is Wheelus's self-serving statement that he did not know how Heather Retsky could have received service of process because Heather Retsky's employees generally work remotely. (Motion, Ex. A ¶ 25, ECF No. 15-3).

Accordingly, because Zoe Capital has not made any showing that it did not receive service of process in this case, the Court shall deny its request to set aside the Default Judgment under Civil Rule 60(b)(4).

**B. Civil Rule 60(b)(1)**

In the alternative, Zoe Capital requests that the Court set aside the Motion on the basis of Civil Rule 60(b)(1), which allows the Court to grant relief from a default judgment where the defaulting party can show "mistake, inadvertence, surprise, or excusable neglect." Once again, Zoe Capital has not met its burden here.

"To establish mistake, inadvertence, or excusable neglect under Rule 60(b)(1), a defaulting party must show that: '(1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint.'" *In re Worldwide Web Sys., Inc.*, 328 F.3d at 1295 (emphasis added). A party is **not** entitled to relief from either an entry of default or a default judgment where the party "display[s] either an intentional or reckless disregard for the judicial proceedings." *See Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951–52 (11th Cir. 1996) (applying this rule to a motion to set aside an entry of default under Civil Rule 55), *accord Friedman*, 777 F. App'x at 333 (holding that the "good cause" standard of Civil Rule 55(c) "is more lenient than Rule 60(b)'s 'excusable neglect' standard.").

In *In re Worldwide Web Sys., Inc.*, the Eleventh Circuit Court of Appeals affirmed a decision denying a motion to set aside default judgment for fraudulent and

14

preferential transfers because (1) the defaulting defendant failed to offer a meritorious defense other than "general denials offered only at the highest order of abstraction," (2) the plaintiff would be prejudiced by having to restart the litigation and wait nearly three years from the filing of the initial complaint before a trial would take place, and (3) despite the plaintiff learning of the default judgment in November of 2000, he waited approximately two months before filing a motion to set the judgment.  328 F.3d at 1296–98.

### 1. The Good Reason Element

As discussed above, the *Worldwide Web Sys., Inc*. Court held that a defaulting defendant did not show "good reason" for his delay in participating in the litigation where "he learned of the final default judgment on November 11, 2000," but failed to move to set aside the judgment until January of the following year: just short of two months later.  *Id*. at 1297–98.  In a subsequent unpublished decision, the Eleventh Circuit held that a defendant failed to provide a good reason to set aside a default judgment where the defendant did not file anything with the Court for more than two months after learning of the lawsuit. *Friedman*, 777 F. App'x at 335 ("Indeed, Schiano *still* fails to offer a good reason for his failure to timely appear. Schiano learned of the lawsuit by January 17, failed to file anything with the court until March 23, and offered no reason for the delay." (emphasis in original)).

Zoe Capital has given two reasons for its delay, but the Court does not find these to be *good* reasons.  The first is that Zoe Capital did not view the Summons and Complaint until after the instant case was closed following entry of the Default

Judgment.  Second, it argues that Wheelus "made an appearance on Defendant's behalf at the June 25, 2024 status conference," which "caused confusion and surprise and led to Defendant's inadvertent and mistaken failure to oppose the Amended Motion."  (Motion at 22–23, ECF No. 15-2).  However, Zoe Capital leaves out many relevant details about the history of this case that tip the scale in Plaintiff's favor.

### a.  The "Appearance" Issue

Where a defendant "has appeared personally or by a representative, that party or its personally or by a representative, that party or its representative must be served with written notice of the [plaintiff's] application" for default judgment.  Civil Rule 55(b)(2).

Zoe Capital contends that Sean Wheelus *appeared* on behalf of Zoe Capital at the June 25, 2024 Status Conference and therefore the Plaintiff should have sent the notice of its Amended Motion for Default Judgment to Wheelus's address.  However, for more than two centuries, courts have recognized that corporations may only appear in court through an attorney.  *Osborn v. Bank of U.S.*, 22 U.S. 738, 830 (1824) ("A corporation, it is true, can appear only by attorney[.]"); *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) ("The rule is well established that a corporation is an artificial entity that can act only through agents, cannot appear *pro se*, and must be represented by counsel.").

As he made clear in his affidavit, Wheelus is not an attorney and therefore could not have made an appearance on behalf of Zoe Capital in this case despite his lone statement at the Status Conference that he represented Zoe Capital during the

opening announcement of appearances at the Status Conference.  Zoe Capital could only appear in this Court through an attorney.[11]

### b. Zoe Capital's Failure to Take Action

In Wheelus's Affidavit, he stated that he received a copy of the Order and Notice of Status Conference, which Wheelus attended on June 25, 2024.  (Motion, Ex. A ¶ 28, ECF No. 15-3).  He additionally represented that he "did not fully appreciate what was going on or understand much of what was said [at the Status Conference]" and that he "did hear other insurance agents mention they had not retained counsel, so [he] did not think Zoe Capital needed to either." *Id*.

However, the Order and Notice that Wheelus and Zoe Capital received from Heather Retsky clearly stated in the heading that Zoe Capital was a Defendant to an "Adversary Proceeding"[12] brought by the Plaintiffs, which were identified as the liquidating trusts for Aliera and Sharity.  Wheelus and Zoe Capital were admittedly

---

[11] Even if Zoe Capital *could* appear through its non-attorney principal, the Court would still find that Wheelus's lone statement at the Status Conference did not constitute an appearance because "an appearance requires a presentation or submission to the court where the lawsuit is pending," and "that the defendant engage in some sort of conduct clearly indicating an intent to defend the suit." *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 858 (7th Cir. 2011) (internal quotations and citation omitted); *see also Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 937 (5th Cir. 1999) (holding that to qualify as an appearance, the defendant's actions "must give the plaintiff a clear indication that the defendant intends to pursue a defense and must be responsive to the plaintiff's formal Court action." (internal quotations and citation omitted)); *Key Bank v. Tablecloth Textile Co.*, 74 F.3d 349, 353 (1st Cir. 1996) (holding that "a defaulting party has appeared for [Civil] Rule 55 purposes if it has indicated to the moving party a clear purpose to defend the suit." (internal quotations and citation omitted)).  As discussed above, Zoe Capital did not otherwise participate in the Status Conference, never contacted the Court or Plaintiffs before or after receiving notice of the Status Conference until filing the pro se motion for reconsideration, and failed to take any other action evincing an intention to defend the case, nor did he provide an address at which he could be served.  Thus, Wheelus did not appear on behalf of Zoe Capital for that reason as well.

[12] This was written in all caps in the Order and Notice.

familiar with both Aliera and Trinity/Sharity.  The name of the Court,[13] case number, and Judge were also identified in the Order and Notice.

In addition, despite his statement to the contrary, no insurance agents at the Status Conference stated that they had not retained counsel for this matter.  Instead, the principal for two defendants in related adversary proceedings stated that his company's retained counsel was in a car accident and was not able to respond to the complaint nor attend the Status Conference.  June 25, 2024 Hearing at 1:35:20P.M. The Court expressly stated to that defendant's principal that he "need[s] to have [that defendant's attorney] or someone in his firm make a prompt appearance in the case and start prosecuting the defense of the case.  Otherwise, the Plaintiff is going to continue to press forward with a motion for default judgment." June 25, 2024 Hearing at 1:59:26P.M.

Although he may not have fully understood what was going on at the Status Conference, Wheelus did not speak up to ask what the Status Conference was about or seek any other clarification about the issues in this case at that time or thereafter. Furthermore, any reasonable person receiving a notice of a status conference naming his company as a defendant in a lawsuit, regardless of whether he received the summons and complaint, would either contact the plaintiff's attorney or his own attorney to find out what is going on.  Doing nothing is not a reasonable response.

Wheelus also represented that "there was no mention [at the Status Conference] that [he] heard that Zoe Capital was in default or had not responded to

---

[13] This was written in bold at the top of the Order and Notice.

Plaintiffs' complaint." (Motion, Ex. A ¶ 28, ECF No. 15-3). However, Zoe Capital was mentioned *by name* as being in default at the hearing. *See* June 25, 2024 Hearing at 2:57:51 P.M. Still, Wheelus purportedly "left the June 25, 2024 status conference under the impression and believing Defendant would receive further instructions in the mail regarding the complaint." (Motion, Ex. A ¶ 28, ECF No. 15-3). However, no such representations were made at the hearing to Wheelus or otherwise that he would receive "further instructions." If anything, the Court said the opposite to the defaulting parties at the hearing—that an attorney must *take action* in the case to avoid an entry of default and a default judgment.

However, Wheelus did not take any action in this case until October 10, 2024, when he filed a pro se motion on behalf of Zoe Capital asking the Court to reconsider its entry of the Default Judgment. (ECF No. 11). Less than a month later, the Court denied the pro se motion on the basis that Zoe Capital must be represented by an attorney due to its status as a corporation. (ECF No. 13). After denying the pro se motion, Zoe Capital took *more than five months* to file the instant Motion through counsel.

At no point prior to the entry of the Default Judgment (ECF No. 9) did Zoe Capital make any inquiry into what this adversary proceeding was, entailed, or otherwise required of it and Wheelus. Also, despite knowing that Heather Retsky received mailings related to the case on behalf of Zoe Capital, Wheelus never communicated with Plaintiff or the Court of this purported mailing error prior to the entry of the Default Judgment. Further, nowhere in Wheelus's Affidavit did he

represent whether he asked Heather Retsky to monitor its incoming mail for additional documents related to this adversary proceeding. Even though Wheelus is not an attorney, a reasonable person surely would have made some inquiry into a purported lawsuit against his company. The Court finds it "perfectly reasonable to conclude that [Defendant] exhibited a 'reckless disregard for the judicial proceedings,' which would be sufficient on its own to bar him from relief" under Civil Rules 55(c) and 60(b)(1). *See Friedman*, 777 F. App'x at 335 (quoting *Compania Interamericana*, 88 F.3d at 951–52).[14]

Because Zoe Capital (1) had notice that this adversary proceeding was pending against it, (2) failed to inquire about or participate in the case in any capacity beyond Wheelus merely announcing his presence at the Status Conference, (3) has not shown beyond a mere self-serving statement in Wheelus's Affidavit that it did not receive a copy of the Summons and Complaint, and (4) took nearly seven months to move to set aside the Default Judgment through counsel, the Court finds that Zoe Capital has not demonstrated a good reason for relief from the Default Judgment.

---

[14] The only other argument that Zoe Capital has made was that it did not receive the Summons and Complaint until after it retained counsel, but again the only support for that assertion is a "self-serving affidavit[]" by Wheelus, Zoe Capital's principal, which the Court finds "lacks credibility in light of other, objective evidence in the record that suggests [Zoe Capital] had knowledge of the lawsuit" no later than June of 2024. *See id.* at 328–29. Again, no affidavit from Heather Retsky was included with the Motion or the Reply to verify that Heather Retsky never received the Summons and Complaint as Zoe Capital's registered agent, and the record shows that Heather Retsky did in fact receive the service of process for Zoe Capital. Any issues that Zoe Capital may have with Heather Retsky's performance as a registered agent are not this Court's problem to resolve. Zoe Capital may have other methods at its disposal to rectify any alleged wrongdoing by Heather Retsky. *See Hartford Fire Ins. Co. v. Galaxy Theatres, LLC*, No. 2:18-CV-03225-R-PLA, 2019 WL 4570019, at *2 (C.D. Cal. July 11, 2019) ("In general, a registered agent owes a duty of 'reasonable care' in receiving service of process. *See Azalea House LLC v. Nat'l Registered Agents, Inc.*, 415 F. App'x 958, 961 (11th Cir. 2011)[.]").

### 1. The Prejudice to Plaintiff

The prejudice prong of Civil Rule 60(b)(1) likewise does not favor granting Zoe Capital relief from the Default Judgment. "While the prejudice in this case is not particularly pronounced, [the Court] find[s] . . . that there is some prejudice to [Plaintiffs]." *In re Worldwide Web Sys., Inc.*, 328 F.3d at 1297.

This adversary proceeding was initiated on February 15, 2024, as one of approximately thirty related cases against brokers that sold products for the Debtor. Those cases have intentionally largely followed the same schedule to promote the economic and efficient administration of the case and the use of judicial resources, and much has happened in those cases: motions to dismiss have been argued and resolved, answers have been filed, court-mandated mediations have taken place, discovery is ongoing and on the same schedule for each of the defendants, the defendants' attorneys have to coordinate depositions of the Debtor's principals and experts, and the summary judgment and trial stages will be conducted at or around the same time. More than a year of active, contentious, and complex litigation passed by before Zoe Capital finally retained counsel to file the instant Motion more than seven months after the Default Judgment was entered. "While Defendant[] [was] idle, Plaintiffs and the Court devoted significant time and resources in adjudicating Plaintiffs' substantive claims" in the related cases that should follow a similar track. *Friedman*, 777 F. App'x at 335 (where the complaint was filed in December 2016, default judgment was entered in January 2017, the defendant emailed the court in March 2017 to make a pro se appearance and contest service, and the motion to set

aside was not filed by defendant until May 2017—less than a year after the suit was initiated).

Because Zoe Capital cannot show either a good reason for its delay in defending itself or lack of prejudice to the Plaintiff, the Court finds that relief under Civil Rule 60(b)(1) is not warranted in this case.

### C. Civil Rule 60(b)(3)

Zoe Capital next argues that the Default Judgment should be set aside due to "fraud . . . , misrepresentation, or misconduct by" the Plaintiffs, because they misrepresented in the Amended Motion for Default Judgment and the prepared Order granting Default Judgment that Zoe Capital failed to defend or respond to the Complaint. *See* (Motion ¶ 74, ECF No. 15-2). The Court disagrees. First, no response to the Complaint was ever filed in this case, nor were there any filings by Zoe Capital until after the Court granted the Amended Motion for Default Judgment. And as the Court discussed above, Wheelus's mere statement at the Status Conference that he was "representing Zoe Capital"—and nothing more—neither amounted to nor displayed an intent to mount a defense to the lawsuit. Accordingly, because Plaintiff did not make any misrepresentations to the Court, the Court finds that Zoe Capital is not entitled to relief under Civil Rule 60(b)(3).

### D. Civil Rule 60(b)(6)

As a last resort, Zoe Capital argues that it should be granted relief from the Default Judgment under Civil Rule 60(b)(6)'s catchall provision because it would otherwise suffer "extreme" and "unexpected" hardship by having to pay $376,472.33,

to Plaintiff pursuant to the Default Judgment. (Motion ¶ 76, ECF No. 15-2) (quoting *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984)); (Default Judgment, ECF No. 9).  Indeed, Civil Rule 60(b)(6) may only be applied where "extraordinary circumstances" justify relief from the judgment, *see, e.g.*, *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988), independent of any other enumerated basis for relief under Civil Rule 60(b).[15]

Although the Default Judgment award is relatively large, it is not an award for "damages" as Zoe Capital contends but rather is merely an avoidance and recovery of transfers made by Aliera to Zoe Capital.[16]  Even still, "[t]here is nothing exceptional, extreme, or unexpected about being liable for a large monetary judgment after failing to appear, answer, or otherwise respond to a complaint." *Atl. Corp. of Wilmington, Inc. v. TBG Tech Co., LLC*, No. 21-24317-CIV, 2022 WL 18495889, at *8 (S.D. Fla. Dec. 1, 2022).  Zoe Capital learned about the instant adversary proceeding no later than by June of 2024, took no action in the case until well after the Default

---

[15] Civil Rules "60(b)(1) and (b)(6) are mutually exclusive. Therefore, a court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1)." *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986).  Accordingly, no other enumerated basis for relief may be transmuted onto Civil Rule 60(b)(6). *See Kemp v. United States*, 596 U.S. 528, 533 (2022) (Civil Rule 60(b)(6) "is available only when Rules 60(b)(1) through (b)(5) are inapplicable.").

[16] Zoe Capital mischaracterizes the Default Judgment as awarding "damages" to the Plaintiff. (Motion ¶ 77, ECF No. 15-2) (citing *Domineck v. One Stop Auto Shop, Inc.*, 302 F.R.D. 695, 699 (N.D. Ga. 2014) ("Defendant would have to pay over $54,000 in damages without even having litigated his defense." (footnote omitted))).

However, the Default Judgment merely provides for the recovery of transfers made to Zoe Capital by the Debtor rather than an award for damages because the goal is "to restore to [the] [P]laintiff funds or property in the possession of [the] [D]efendant." *See* 5 Collier on Bankruptcy ¶ 550.02 n.1 (discussing how an action to recover fraudulent transfers "involves a restitutionary remedy," which is "equitable instead of legal.").  In other words, the Default Judgment here merely provides that Plaintiff may recollect the affixed sum of monies that were transferred by Aliera to Zoe Capital, which Zoe Capital had in its possession at some point in time.

Judgment was entered, and did not file a motion through an attorney until seven months after the Default Judgment was entered. "[T]his case is replete with inexcusable delay" by Zoe Capital to defend its case, and the Court therefore finds that Zoe Capital has not shown justification for relief under Civil Rule 60(b)(6). *See Griffin*, 722 F.2d at 680.

As the Eleventh Circuit aptly remarked in reversing a district court's decision to set aside a default judgment:

> The district court, in granting the defendants' motion to set aside the default and the default judgment, provided no reason for granting the motion other than its belief that the case ought to be decided on the merits. This is certainly a noble sentiment; inherent in the adversary system of justice is the idea that each side ought to be heard prior to a court's entry of final judgment. However, that same system requires that the court have the power to compel parties to appear before it. The threat of default (and default judgment) is the court's primary means of compelling defendants in civil cases to appear before the court. If these defaults could be put aside without cause, the threat of default would be meaningless, and courts would lose much of their power to compel participation by civil defendants.

*African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1203 (11th Cir. 1999).

Zoe Capital knew about this case; had ample time to inquire about, appear in, and assert a defense in this case; but failed to do so or to show any intention to do so until well after the Default Judgment was entered. Even when the Court denied Zoe Capital's pro se motion for reconsideration, it still waited more than five months before filing the instant Motion through counsel. The Court finds Zoe Capital's delay in defending itself inexcusable in light of the facts of this case. "The threat of

default would be meaningless, and [the] [C]ourt[] would lose much of [its] power to compel participation by civil defendants" if it set aside the Default and Default Judgment in this case. *Id.*

## CONCLUSION

After reviewing and considering the Motion and subsequent filings, the arguments of the parties and all other matters of record, the Court finds that Zoe Capital has not sufficiently established its entitlement to relief under Civil Rules 55(c) and 60(b), which are applicable to this case through Bankruptcy Rules 7055 and 9024(a) respectively.  Accordingly, it is hereby

**ORDERED** that Zoe Capital's Motion is **denied**.

The Clerk is directed to serve a copy of this Order on the Plaintiff and Defendant, and their respective Counsel.

**END OF ORDER**